H. H. Southgate *v.* E. Regenthal.

D. Dows & Co. *v.* E. Regenthal.

[Abstract Kentucky Law Reporter, Vol. 7—594, 609.]

**Streets by Dedication.**

Where the owner of real estate plats it into lots, streets and alleys and files his plat, his acts amount to a dedication to the public which when accepted by the public by being used become streets and alleys, and when land is laid off into lots, streets and alleys, and lots are sold, each lot owner has a right not only to use the streets as ways of ingress and egress, but to have them thrown open to the use of the public.

**Assessment of Lots for Improvement of Streets.**

The charter of Covington provides that the council have power to have streets and alleys graded, paved, macadamized or turnpiked at the expense and cost of the owners of lots fronting such streets,

and thus create liens on such lots which may be enforced; but there is no personal liability on the owner of such lots, and no personal judgment can be rendered against such owners for the amount of such assessments.

**Dedication of Streets.**

> The intention of the owner of real estate to dedicate a part of it to the public for streets is shown when the owner plats such ground, laying out streets and alleys, records his plat and sells off lots along the same; and that the public has accepted such a dedication is shown by the use of it by the public, the making of a contract for its improvement and the erection of gas posts along it.

APPEAL FROM KENTON CIRCUIT COURT.

February 11, 1886.

OPINION BY JUDGE HOLT:

These cases will be considered together as they involve the same question.

The city of Covington in 1881, by a proper ordinance, directed the improvement of what it claimed was Banklick street, from a point fifty feet south of the Southgate north line to Sixteenth street, at the cost of the owners of the adjacent lots. Before this was ordered several lot owners living upon the alleged street, and some of whom lived upon lots abutting the portion of it to be improved, petitioned the city council for it. The appellee, Regenthal, did the work under a contract with the city; it was accepted, and the cost properly apportioned by a proper ordinance among the lot owners whose property abutted upon the improved portion. The appellants, Henry H. Southgate and David Dows & Co., each own a lot, embraced by the assessment, and in these suits, brought by the contractor to enforce the collection of their proper proportion of it, they are resisting a judgment upon the ground that it is not a street, but land which in fact belongs to the devisees of Richard Southgate, and to which the city has neither title nor right of easement.

The pleadings present some other questions; but an examination of the entire record shows that this is the only one which we need consider. It is urged that the answer of Dows & Co. does not make this issue. We, however, think that it does so substantially; moreover, it is aided by the averments of the reply.

A brief history of the property is necessary to a proper consideration of the question. From 1824 until his death in July, 1857, Richard Southgate was the owner of a considerable tract of land, a portion of which was in 1850 embraced within the limits of the city of Covington by an act of the legislature extending its boundary. By the same means an additional portion was included in 1854. In his will he designated commissioners who were to divide his land among his devisees, and in April, 1858, they did so, the division being returned to and recorded in the Kenton County Court. In doing so they, as shown by their report and the plat, divided the land near the city confines by imaginary or supposed streets, being the supposed extensions of the city streets, which then extended to the land, or perhaps in some instances, for a short distance into it, but the division lines of the lots ran to the center of the supposed streets. Two of them were Banklick and Holman streets; and in this division lot number 6, of four and fifty-four hundredths acres, binding upon the east side of the supposed Banklick street, and of which the lot of the appellants, Dows & Co., is a part, was allotted to Mrs. Parker, who is their remote vendor, while lot number 7 next to and west of it and between Banklick and Holman streets, containing three and fifty-three one hundredths acres, and of which the appellant's Southgate's, lot is a part, was allotted to the heirs of E. L. Southgate.

The language of the report as to the first named lot is: "Another tract in Covington, lot No. 6 and bounded as follows: beginning at Southgate's northern line, center in Russel street (if extended), thence westwardly with said line to Banklick street (if extended) 314 feet, thence south with the center of said street six hundred seventy-five and one-half feet, thence eastwardly at right angles three hundred ten and one-half feet to Russell street, thence with the center of the same northerly six hundred six and one-half feet to the beginning." As to the last named one it reads: "Beginning in the center of Holman street at a point where Southgate's northern line joins said street, from thence east with said line two hundred thirty feet to the center of Banklick street, thence with the center of the street southwardly six hundred seventy-five and one-half feet, thence at right angles westwardly to the center of Holman street two hundred thirty feet, four inches,

thence with the center of Holman street northwardly seven hundred twenty-two feet to the beginning."

In October, 1858, the lot, which had been allotted to E. L. Southgate's heirs, was through a proceeding instituted by them in the Kenton County Court divided into six parts and allotted among them, lot No. 4 falling to the appellant, Southgate; and it is the lot upon which the assessment has been made of which he ecomplains. In the division last named the lots did not run to the center of the streets. The report says: "We divided lot No. 7 of said division and allotted that lying between Banklick and Holman streets in the city of Covington into separate parcels numbering from 1 to 6 inclusive, running through from street to street;" and there is filed with the report, as a part of it, a plat showing the two streets and the lots binding upon the margin of them.

Since this division, and prior to the improvement of Banklick street, it appeared that several dwelling-houses had been built along it upon the west side and where the street has since been improved, and upon what was lot 7 in the division among the heirs of Richard Southgate. It further appears that a portion of it has been sold, belonging at different times to different owners, conveyances calling for Banklick street upon the one side and Holman upon the other; and that one of these vendees had built and was living in a house upon a portion of it when the street improvement was made. The lot of the appellants, Dows & Co., has also passed through several hands since it was allotted to Mrs. Parker as a part of her lot No. 6, the conveyances calling for Banklick street.

The lots of the appellants are a part of the land which was taken within the city limits by the extension above named. The evidence shows that Banklick street has been shown by the city plats at least since 1868; that prior to the improvement the city had erected gas lamps along the portion of it where the improvement was made; that portions of it had been used by the public for ten or twelve years prior to the improvement, and all of the portion so improved for five or six years. It was in the edge of the city; the land there was mostly uninclosed; and as the way would for many reasons become obstructive the line of travel would change; and all of it had therefore not been used by the public as long as some portions of it.

It is true that the mere action of the commissioners in dividing

the property would not constitute a dedication for city purposes; but long acquiescence in and recognition of their action by the parties interested is not to be disregarded. Even a parol dedication is valid. A writing is not essential to its existence. It may be presumed from circumstances, the easement being in the party who acquires it and the fee in another. If the owner lays out a public highway through his land, and the dedication is either expressly or impliedly accepted, his act estopped him from interfering with the public travel. In the case of *Wyman v. New York,* 11 Wend. (N. Y.) 486, it was held that the recognition by its proprietor in the city of New York of the plan of the city, laying out his ground into streets, was a dedication of them to be taken for public use whenever the corporation should see proper to open them; while in the leading case of *Cincinnati v. White's Lessee,* 6 Pet. (U. S.) 440, 8 L. ed. 452, it was declared that no particular form or ceremony was necessary to a dedication, that it only requires the assent of the owner and the use for the intended public purpose.

It was said by this court in the case of *Elizabeth & Paducah R. Co. v. Thompson,* 79 Ky. 52: "But it is well settled that when land is laid off into lots, streets and alleys, and lots are sold, each lot owner has a right not only to use the streets as ways of ingress and egress, but to have them thrown open to use by the public in any manner not inconsistent with the uses for which streets are established."

In this instance ground within the city limits is laid off by the owner in accordance with the plan of the city. The space for the streets is left uninclosed, and is in fact in use by the public; lots are sold and dwelling-houses built upon them; gas posts are erected along the street by the city; and after all this has taken place one who was a party to the proceeding under which the allotment was made, and another who claimed through a party who has recognized it by both act and deed, deny the dedication; and without invoking the aid of a court to prevent the improvement being made, when it had been done claims that the city had no right to order it, although necessary for its use by the public and those living along it. Here is the assent by the owner and the use by the public, he acquiescing in it. The acts of dedication connect themselves with the appellant or those through whom they claim; and its ac-

ceptance must be implied from the use and the recognition of it by the city. Moreover, its charter provides that when the owner of land shall dedicate a street "it shall immediately vest in the city."

It is urged, however, that the city is estopped from claiming it, first, because in 1852 Richard Southgate in a suit wherein the city admitted his title or the ownership of the fee, recovered a judgment against it for taxes illegally collected from him and which had been assessed against his land, which embraced the lots of the appellants, and which judgment was affirmed by this court in 1855. This recovery was based upon the fact that the land had not then been laid off into lots; there were no streets through it, and it was being used for agricultural purposes. Second, because in 1855 he successfully enjoined the collection of an assessment by the city, made for the purpose of paying the cost of improving a small part of Banklick street, upon the ground that it was not then a street. It will be recollected that neither the street nor any lots had then been laid off through or from his land. Third, because in 1860 the heirs of Richard Southgate brought an action to enjoin the city from collecting a general city tax upon their land, which then included the lots now owned by the appellants; and in 1863 this court held that it was liable for it, because the condition of the land and its use had not been changed since the decision of this court as to it in 1855. In this action the city admitted the title to the land to be in the heirs; but this admission was in conflict with a right of way or easement over it; and in none of these does the division among the heirs of E. L. Southgate seem to have been considered.

This defense was not relied upon in the answer of the appellant, but in a rejoinder. It is not alleged even in it that it was either admitted or adjudged, in the actions above referred to, that there was no street where the improvement was made by the appellee, but merely that it was admitted by the city and adjudged that the land belonged to Southgate. This was not inconsistent with a public easement in the land. Waiving this question, however, we are of the opinion that this attempted defense could not be set up by the rejoinder.

Under the Civil Code 1876, § 99, a rejoinder may contain a traverse, a statement of facts constituting an estoppel against or avoidance of facts stated in a reply in support of the plaintiff's original

cause of action, or a defense stated in the reply to a set-off or counterclaim or a counterclaim stated in the reply. An inspection of the pleadings in this case shows that under the above rule it should have been asserted by answer.

But waiving this also, yet it would not have availed the appellants, owing to the acts of the parties interested and a material change in the condition of the land since the rendition of those judgments, and the recognition of it by those interested. It is insisted for the appellee upon his cross-appeal that the lower court should have rendered a personal judgment in his favor against the appellant, H. H. Southgate.

The Covington city charter provides: "The council shall have full power and authority to cause and procure all the streets and alleys marked with spaces and-lanes in said city to be graded and paved, macadamized or turnpiked, at the expense and cost of the owners of lots fronting such streets, * * * and when the grading and paving or turnpiking shall be completed, the coucil shall apportion the costs and expenses equally on the lot owners, according to the feet front. And a lien is hereby given on the lots, or parts of lots, for the same; which costs and expenses may be listed and collected as other taxes are by the city collector, or any special collector." Harrison's Charter, p. 11.

It is urged that as the cost is imposed "on the lot owners" such a judgment is thereby authorized. We do not think, however, that the legislature intended to impose personal liability by suit, or that the language fairly admits of such a construction. The judgments upon both the original and cross-appeals are *affirmed.*

*William E. Arthur, for appellants.*

*Carlisle, Goebel & Carlisle, for appellee.*

### RESPONSE TO PETITION FOR REHEARING.

The charter of the city of Covington provides that before its council can make any contract for any public improvement, its proceedings relating thereto must be referred to its law committee, who, together with the city attorney, must report whether the same are regular, and whether the city will be liable for the cost of the improvement.

It was held in *Worthington v. City of Covington,* 82 Ky. 265, 6 Ky. L. 237, that a compliance with the charter in this respect was necessary to the validity of the contract. The petitions in this case

failed to allege it. A demurrer was filed in the first case above named and overruled; but the question of their sufficiency upon this ground was made by the appellants pleading over and alleging by answer, which was denied by reply, that said report had not been made prior to the making of the contract.

The copies of the order of the council show that in fact the proposal of the appellee to do the work, was not accepted or his bond approved until the law committee and the city attorney made the necessary report, and all were acted upon and approved by the same order.

The various acts of the owners of the property, as shown by its partition and the different sales and otherwise, shows, in our opinion, unequivocally, an intention to dedicate as a city street the land where the improvement was made. On the other hand, a user of the street for any particular length of time, as fifteen or twenty years, was not necessary to show its acceptance.

The making of a contract for its improvement, as the one in question, the erection of gas posts along it, and other acts of control over it upon the part of the city shown in the record, sufficiently evidences its acceptance of the dedication.

The petitions for a rehearing are *overruled*.

*Wm. E. Author, for appellants.*

*Carlisle, Goebel & Carlisle, for appellee.*